**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| GERALDINE P.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:25-cv-11966-DFM<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Plaintiff Geraldine P. challenges the denial of her application for supplemental security income benefits. See Dkt. 1.[1] The Commissioner filed the certified administrative record. See Dkt. 10-1, Administrative Record ("AR").[2] Plaintiff filed an opening brief, see Dkt. 12 ("Pl.'s Br."), the Commissioner filed a response brief, see Dkt. 14 ("Def.'s Br."), and Plaintiff replied, see Dkt. 15 ("Reply").

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] All citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

## II. BACKGROUND

On February 10, 2023, Plaintiff applied for supplemental security income benefits, alleging disability beginning June 1, 2012. See AR 55. After the claim was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). See AR 77-86. The ALJ conducted a hearing on October 24, 2024. See AR 30-54.

The ALJ denied Plaintiff's claim by written decision on December 6, 2024. See AR 14-25. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 10, 2023. See AR 19. At step two, the ALJ determined that Plaintiff had the severe impairments of "[o]steoarthritis of the right knee, asthma; migraines; hypertension." Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with various limitations. See AR 19-20. Specifically, the ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except: Lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 4 hours; sit for 6 hours in an 8-hour day 4/6 sit; never climb ladders, rope or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; require a cane for ambulation greater than 20 feet; no exposure to concentrated dust, fumes, gases or respiratory irritants.

AR 19-20. At step four, the ALJ found that Plaintiff had no past relevant work. See AR 24. At step five, the ALJ relied on the testimony of a vocational expert to conclude that someone with Plaintiff's RFC could perform jobs that exist in the national economy, including office helper (Dictionary of Occupational Titles or "DOT" 239.567-010), routing clerk (DOT 222.687-022), and ticket taker (DOT 344.667-010). See AR 24-25. Accordingly, the ALJ denied benefits. See AR 25.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-11. This action followed. See Dkt. 1.

## III. LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only when the ALJ's findings are "based on legal error or not supported by substantial evidence in the record." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Biestek v. Berryhill, 587 U.S. 97, 103, 108 (2019). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. DISCUSSION

The parties dispute whether the ALJ properly considered Plaintiff's subjective symptom testimony regarding her migraine headaches and osteoarthritis. See Dkt. 12, Plaintiff's Brief ("Pl.'s Br."); Dkt. 14, Defendant's

Brief ("Def.'s Br."). The parties dispute whether the ALJ articulated clear and convincing reasons for rejecting her subjective statements of symptoms and limitations. See id.

**A. Legal Standard**

The ALJ applies a two-step analysis to assess a claimant's credibility for symptom severity. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). Once the claimant "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," then, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. (citing Garrison v. Colvin, 759 F.3d at 1014-15 (internal quotation marks and citations omitted)). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Id. The assessment of an individual's testimony by the ALJ is "designed to evaluate the intensity and persistence of symptoms . . . not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Id. at n.5 (internal quotation marks and citation omitted).

However, "an ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). The clear and convincing "standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Id. "Ultimately, the 'clear and convincing' standard requires an ALJ to show [her] work." Id. at 499.

**B. Plaintiff's Testimony and ALJ's Finding**

Plaintiff testified at the hearing as follows. Plaintiff had five ligament tears in her right knee, which were "not capable of healing properly" because her insurance did not allow her to finish physical therapy. See AR 38. She was advised to keep her knee in motion but the more she walked, "the pain just got worse and worse." AR 39. She has a walker, and without it, she can walk about four houses down, after which she must stop and rest for fifteen to twenty minutes for the pain to subside. See id. Plaintiff originally injured her knee by falling on a vacuum cleaner and dislocating it. See AR 42. Plaintiff "can't bend her knees very much," and her mother helps her to get dressed from the waist down. AR 45. During the day, she does some dishes and then her mother will take over once she can no longer bend. See id. She elevates her legs and knees and lies down for the rest of the day. See id. Plaintiff will get picked up to "go to church four days out of the week." AR 45-46.

Plaintiff describes her level of pain as being eight and a half out of ten. See AR 48. Plaintiff has also "been suffering from stress and migraines" since she was fourteen years old, "usually about three times out of the day." AR 50. She takes medication from a neurologist and lies down in the dark for about an hour while the medicine starts working. See id. She takes about eight medications everyday which cause her to "get dizzy" and have difficulty focusing. See AR 51. She wakes up two to three times out of the night and takes three naps a day, between one hour and a half each. See id.

Plaintiff does not currently work but worked as a maid in a motel and then became a certified nurse assistant until she had her knee surgery. See AR 42. After that, she no longer worked. See id.

The ALJ discredited Plaintiff under the second Trevizo step, finding that her statements of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record," that the medical record

"demonstrates lesser severity of functionally limiting symptoms than as alleged by [Plaintiff]." See AR 21. The ALJ described the medical evidence, including a December 2021 magnetic resonance imaging study (MRI) done for Plaintiff's headaches with "normal" results; Plaintiff's March 2022 knee surgery; a June 2023 internal medical consultation with Dr. Talaat Maximous; a January 2024 consultation with a pain management specialist, at which Plaintiff "stated that her lawyer advised her restart pain medication for her disability application"; a February 2024 MRI of Plaintiff's right knee that "showed minimal damage"; and a second consultative examination conducted in September 2024 with Dr. Sohail Afra. See AR 21-22.

The ALJ noted that Plaintiff's headaches were intermittent and managed with medications. See AR 21. The ALJ noted that there are few records showing therapy or treatments for Plaintiff's knee after her 2022 surgery. See AR 21. The ALJ noted that Plaintiff had been taking prescription pain medication in August 2022, but the last time it had been filled before the January 2024 consultation was in August 2023. See AR 21.

### C. Analysis

The ALJ's primary finding was that Plaintiff's statements were not consistent with the objective medical record. See AR 21-24. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The evidence in the record tends to undercut Plaintiff's claims of the severity of her knee-related symptoms. Plaintiff's Function Report states that she cannot stand or walk for longer than 10 minutes due to her knee injury. See AR 214. But as the ALJ explained, there are few records showing therapy or treatments for the Plaintiff's knee after surgery. See AR 21. Plaintiff had a

consultative examination in June of 2023 with Dr. Maximous, at which a physical examination determined a slow and limping gait, but with the ability to rise from a sitting and supine position without difficulty. See AR 362-63.[3] At that time, Plaintiff was using a right knee brace and a forearm crutch in her left hand. See AR 363. Dr. Maximous's examination of Plaintiff's right knee also showed that she had minimal swelling, moderate tenderness medially and laterally, and a range of motion from 0 to 120 degrees with pain. See id.

The ALJ also pointed out that according to a report from Plaintiff's January 2024 consultation with a pain management specialist, she had not had her Norco pain medication filled since August of 2023. See AR 21. This report also indicated that Plaintiff stated that her lawyer advised her to restart pain medication for her disability application. See AR 388. Meanwhile, the examination of the knees showed tenderness on the right knee and that joint range of motion was moderately limited. See AR 393.

At Plaintiff's September 2024 evaluation with Dr. Sohail Afra, her examination showed that there was no edema of the knees, with a range of motion in her right knee from 0 to 80 degrees. See AR 371. She arrived at this evaluation with her four-wheeled walker, but when she was asked to walk without the use of her walker, she was able to do so with mild antalgic gait, even if it was difficult for her to walk on toes and heels. See AR 368, 371. Dr. Afra opined that Plaintiff's chosen use of the four-wheeled walker was "not an absolute necessity for ambulation especially for short distances." AR 372. Dr. Afra also opined that Plaintiff was limited to walking and standing for six out of eight hours. See AR 373. The ALJ found Dr. Afra's opinions persuasive and

[3] The ALJ ultimately found Dr. Maximous's opinion that Plaintiff had "no limitations" unpersuasive and unsupported by the medical records, which showed limited range of motion in Plaintiff's right knee as well as some swelling. See AR 23.

further reduced the walking and/or standing limitation to four hours in the RFC. See AR 20, 22-23. Plaintiff did not independently challenge the ALJ's findings regarding the persuasiveness of Dr. Afra's opinion.

The ALJ noted that an MRI of the right knee in February 2024 also showed minimal damage. See AR 21 (citing AR 387). The ALJ noted that while Plaintiff uses a walker, the medical record "does not demonstrate medically necessary use of an assistive device except after her knee surgery in March 2022." Id. In general, the ALJ observed that "there are little to no objective medical records indicating recommendations for more aggressive treatments for [Plaintiff's] knee pain" after her surgery. Id.; see also AR 22-23 ("[T]here are few records of aggressive treatments for reported pain after the surgery."). The ALJ noted that "[w]hile there are intermittent reports of knee pain to her primary care physician, there are few records showing therapy or treatments for the claimant's knee after her surgery." Id. The ALJ further noted that Plaintiff had taken prescription pain medication in August 2022, last filled it in August 2023, and, in January 2024, stated that her lawyer advised her to restart the pain medication for her disability application. See AR 21.

Thus, the ALJ properly identified areas where the objective medical evidence was contrary to Plaintiff's testimony and discounted her testimony on that basis. See Ahearn v. Saul, 988 F.3d 1111, 1116-17 (9th Cir. 2021) (affirming the district court's affirming the ALJ's denial of benefits where, among other reasons, substantial evidence supported ALJ's conclusion that the medical record was inconsistent with the severity of limitations claimant described in his testimony); Tau V. M. F. v. O'Malley, No. 23-1112, 2024 WL 1699354, at *3 (C.D. Cal. Mar. 18, 2024) (finding ALJ reasonably discounted plaintiff's allegations as "belied by his generally normal clinical presentations").

Likewise, Plaintiff's description of the severity of her migraines is neither consistent across the board nor consistent with the medical record. As the Commissioner points out, in October 2021, Plaintiff reported that she had been having headaches since 2003, and in December 2021, she complained of up to three headaches a day, each lasting a few hours, and reported taking Pamelor daily at bedtime. See AR 291, 306. Then, in December 2022, she reported that her headaches were occurring only intermittently and that she was using Pamelor only when necessary. See AR 285, 294, 311. In September 2024, Plaintiff reported a "history of migraine headaches diagnosed for the past two years approximately" and that she took her over-the-counter remedies as needed. AR 368. In October 2024, Plaintiff testified that she had been having migraines since age 14, had migraines thrice daily, was on medication for them, and that when she had a migraine, she had to lie down in the dark for one hour while her medication took effect. See AR 50. One of the factors an ALJ considers in weighing a claimant's credibility is "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal citations omitted). Plaintiff's inconsistent statements here undercut her subjective complaints.

Plaintiff argues that the ALJ's mention of Plaintiff's brain MRI results being normal is not inconsistent with the presence of migraine headaches. See Pl.'s Br. at 12. Plaintiff argues that MRIs often reveal no abnormalities in individuals suffering from migraine headaches, and that the diagnosis of migraine headaches is primarily based on a patient's reports. See id. at 12-13. However, as the ALJ stated, Plaintiff's records show that her headaches were intermittent and managed with medications. See AR 21. At her evaluation with Dr. Afra, Plaintiff also reported that she took over-the-counter medications as needed for her migraines. See AR 372 ("Chronic intermittent

migraine headache, takes over-the-counter remedies on as needed basis. No headache was being experienced today."). Plaintiff argues that "[e]ven where [her] testimony is minimally credited, her migraine headaches would result in some off-task behavior, absenteeism, or cognitive limitations." Pl.'s Br. at 16. Plaintiff also argues that the ALJ did not address the time in which Plaintiff must wait for her medication to relieve her headaches. See id. But as the Commissioner points out, "it was Plaintiff's burden to prove that she was more limited than the ALJ assessed in his residual functional capacity (RFC) finding, and Plaintiff's properly discounted subjective complaints did not help her carry this burden." Def.'s Br. at 8. Plaintiff fails to show error in the ALJ's reasoning.

While the record evidence could be interpreted more favorably for Plaintiff, the Court cannot say that the ALJ committed reversible error in rejecting Plaintiff's testimony regarding her knee pain and migraines based on inconsistencies with the medical evidence and the nature and effectiveness of Plaintiff's treatment during the majority of the relevant time period. See Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Substantial evidence thus supports the ALJ's determination to discount Plaintiff's subject symptom testimony.

## V. CONCLUSION

The agency's decision is AFFIRMED and this case is DISMISSED WITH PREJUDICE.

Date: September 21, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge